# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JESSICA PETERSON, | Case No. 3:17-cv-01702-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| EDGAR MICKLES, MARSHA MCCORKHILL, CPT. ALANA BRUNS, LESTER A. KISER, ROB PERSSON, LISA HALL, FORREST LYONS, BOB K. NELSON, CO AMANDA RASMUSSEN, and DENNIS CASWELL, in their personal capacities; JOHN DOE 1-12; JANE DOES 1-12, | |
| Defendants. | |

Leonard R. Berman, 9220 SW Barbur Boulevard, Suite 119, Box 180, Portland, Oregon 97219. Attorney for Plaintiff.

Ellen F. Rosenblum, Attorney General; Jessica B. Spooner, Assistant Attorney General; and Michael R. Washington, Senior Assistant Attorney General; Oregon Department of Justice, 1162 Court Street NE, Salem, Oregon 97301-4096. Attorneys for Defendants.

**IMMERGUT, District Judge.**

Plaintiff Jessica Peterson filed constitutional tort claims against current and former

officials at the Coffee Creek Correctional Facility ("Coffee Creek"), where she was previously

incarcerated. Plaintiff alleges that Defendants McCorkhill, Bruns, Kiser, Persson, Hall, Lyons, Nelson, Rasmussen, and Caswell ("State Defendants") violated the Prison Rape Elimination Act ("PREA") and the Eighth and Fourteenth Amendments by failing to supervise (claim two) and investigate (claim three) prison staff, and by failing to provide treatment and care for Plaintiff after she was a victim of sexual abuse (claim four).[1]

Plaintiff and State Defendants filed cross-motions for summary judgment on these claims, and the Court held a hearing on December 6, 2019. At the hearing, Plaintiff was represented by Leonard Berman, and State Defendants were represented by Michael Washington. As stated on the record at the hearing, the Court granted State Defendants' motion for summary judgment on the third claim, which Plaintiff had conceded fails as a matter of law. *See* ECF 73 at 4. The Court also denied Plaintiff's motion for partial summary judgment and took State Defendants' motion on the second and fourth claims under advisement. *See* ECF 82. As discussed in this opinion and order, the Court now grants State Defendants' motion for summary judgment on the second and fourth claims because there are no genuine issues of material fact remaining for trial and on the basis of qualified immunity.

## STANDARDS

### A. Summary Judgment

Under Rule 56, a party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc.*

---

[1] Plaintiff's first claim for relief names only Defendant Edgar Mickles and not the State Defendants. Second Amended Complaint ("SAC"), ECF 21 at ¶¶ 32–39. Accordingly, State Defendants' motion does not address Plaintiff's first claim for relief. *See* ECF 55 at 7.

*v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, the party cannot rely on the pleadings to create a "genuine" dispute under Rule 56. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Id.* at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citation and quotation marks omitted).

## B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 134 S. Ct. 2056, 2066–67 (2014); *Krainski v. Nevada ex. Rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And

reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (citation omitted) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) and *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

## FACTUAL RECORD

### A.  Preliminary Matters

Before summarizing the factual record, this Court must address four issues about its scope. First, Plaintiff seeks leave to file her own declaration over two months after the deadline. Second, Plaintiff has submitted excerpts from a deposition without including any certification from the reporter. Third, State Defendants have raised various objections to Plaintiff's evidence. Fourth, Plaintiff asks this Court to take judicial notice of other incidents at Coffee Creek.

#### 1.  Peterson Declaration

In briefing on the cross-motions for summary judgment, Plaintiff cited her own declaration. *See* ECF 72 at 2 ("Plaintiff alleges in her declaration that . . . '16. Officer Nelson walked in on us on one occasion and did not report it to anyone.'"); ECF 73 at 4–5 ("Her declaration attests to her being prohibited from discussing her violations with counselors, staff, fellow inmates and being isolated from the general population and punished for her

victimhood."). But as State Defendants noted in reply, no such declaration was filed. *See* ECF 75 at 5. Indeed, State Defendants moved to strike Plaintiff's references to this declaration. *Id.*

The deadline for Plaintiff's briefing on the cross-motions—after the Court granted two extensions—was October 1, 2019. ECF 63; ECF 68. On December 6, 2019, less than two hours before oral argument, Plaintiff filed her declaration, which did not include a motion or any other explanation for the delay. Decl. of Jessica Peterson ("Peterson Decl."), ECF 79. The declaration also bears a typed, rather than handwritten, signature. *See id.* at 2–3. Considering State Defendants' objections to the untimely declaration, this Court allowed both parties to submit briefing on whether it should be considered as part of the record for summary judgment. *See* ECF 82. That motion for extension of time is now before the Court.[2] ECF 80; ECF 87.

In support of the motion, Plaintiff's attorney submitted his own declaration, in which he explained that ongoing chronic health issues have "hampered [his] cognitive abilities and posed a challenge to [his] practice."[3] ECF 81 at ¶ 3. He also stated that he did not realize that the declaration had not been filed until an hour before the hearing, *id.* at ¶ 4, despite the State Defendants' motion to strike, raising this issue in their September 30, 2019 reply brief, ECF 75 at 5. In addition, he declared:

> Most all the recitations, if not all, in the declaration are known to defendants and this inadvertent late filing does not prejudice their defense of the matter. In fact, they read the declaration at oral argument and did not indicate any new

---

[2] After Plaintiff filed this motion for extension of time, and before State Defendants filed their response, Plaintiff filed a separate "Motion to Amend/Correct Declaration of Jessica Peterson." ECF 83. That motion included a declaration from Plaintiff that differed in form and substance from the one currently pending before the Court. *See* ECF 85. Because Plaintiff did not show good cause for submitting an untimely declaration with factual differences from what the parties briefed in their motions and discussed at oral argument, this Court denied the motion. ECF 86.

[3] Nevertheless, Plaintiff's attorney maintained at the hearing that he is fit to be competent counsel in this case. *See* Or. R. Prof'l Conduct 1-1 ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.").

information therein, nor the need for additional [*sic*] to respond to its factual contents.

ECF 81 at ¶ 5. Nevertheless, State Defendants object, arguing that the declaration from Plaintiff's attorney does not establish good cause in light of their briefing, which made clear in September that no declaration was filed. *See* ECF 87 at 4. State Defendants also object because Plaintiff's declaration lacks a handwritten signature. *See id.*

Local Rule 11-1(a) permits electronic filing of documents with typed signatures, but that rule cross-references Local Rules 5-13 and 10-3. Read together, these rules indicate that in this district, electronically signed documents can satisfy the requirements of 28 U.S.C. § 1746, concerning unsworn declarations under penalty of perjury. *See* L.R. 5-13, 10-3(c), 11-1(a). Counsel filing such a document must maintain the original version at least until the final disposition of the case. *See* L.R. 5-13(a). State Defendants observe correctly that upon request of the Court or another party, Local Rule 5-13(b) requires counsel to produce the version bearing the original signature. *See* ECF 87 at 4. However, the Court has not ordered Plaintiff's attorney to provide the document for review, and State Defendants have not indicated that they have requested it, either. *See id.* Thus, the lack of an original signature on Plaintiff's declaration is not fatal here.

However, local rules also require parties to raise objections to court-imposed deadlines by motion and show, among other requirements, "good cause why the deadlines should be modified." L.R. 16-3(a). Whether the declaration from Plaintiff's attorney establishes good cause is a close call. *See* ECF 81. Plaintiff's declaration is dated April 15, 2019, and Plaintiff filed her motion for partial summary judgment on April 30, 2019. ECF 49; ECF 79. The fact that Plaintiff's attorney's illness intensified in June does not explain why he did not file Plaintiff's declaration before that time. *See* ECF 81 at ¶ 3.

Nevertheless, given the strong policy of resolving issues on their merits, Plaintiff's motion for an extension of time to file her declaration is granted. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259–60 (9th Cir. 2010) (discussing "the general purpose of seeing that cases are tried on the merits" (citation omitted)). This Court observes that quotations from Plaintiff's declaration appear verbatim in her briefing. *Compare* ECF 72 at 2, *with* ECF 79 at ¶ 16. Furthermore, State Defendants have not identified any way in which they would be prejudiced from consideration of the declaration. *See* ECF 87 at 5 ("Nothing in Plaintiff's declaration creates a genuine issue of material fact as to State Defendants' arguments in their Motion for Summary Judgment."). Accordingly, the Court will consider Plaintiff's declaration as part of the record on the pending motion for summary judgment.

### 2. Nelson Deposition

With her motion for partial summary judgment, Plaintiff submitted excerpts from a December 4, 2018 deposition of Defendant Nelson. Dep. of Robert Nelson ("Nelson Dep."), ECF 50-1. The excerpts were an exhibit to a declaration from Plaintiff's attorney, in which he states that they are a true and accurate copy of the original. ECF 50. However, the excerpts do not include a signed certification from the reporter. *See* Nelson Dep., ECF 50-1. Thus, the deposition excerpts are inadmissible. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) ("It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'"). They may not be considered as part of the record on the pending motion. *See id.* at 773.

### 3. Evidentiary Objections

State Defendants have raised three evidentiary objections related to the pending summary judgment motion. Among these objections are two "motions to strike," which the Court treats as

evidentiary objections. *See* ECF 75 at 3, 5; L.R. 56-1(b) (requiring evidentiary objections on summary judgment to be asserted in response or reply memoranda).

First, State Defendants object to "allegations that Defendant Nelson was allegedly aware of sex abuse, told Plaintiff to keep quiet, and failed to report it" as lacking evidence. ECF 75 at 3. Plaintiff subsequently filed her declaration, in which she states that "Officer Nelson walked in on us on one occasion and did not report it to anyone." ECF 79 at ¶ 16. However, as Plaintiff conceded at the hearing, the declaration does not support the allegation that Defendant Nelson told Plaintiff to keep quiet.

Second, in her briefing on the cross-motions, Plaintiff alleges that she was the denied the ability to discuss the fact that she was raped. ECF 73 at 6. State Defendants object to this assertion as unsupported by evidence. *See* ECF 75 at 5. Plaintiff states in her declaration that "Capt. Bruns, the PREA liaison, never provided me with required PREA counseling for my trauma and instead [put] me in solitary and later isolated medical. I was denied privileges and made to feel like the offender of Mickles, rather than the [*sic*] his victim." ECF 79 at ¶ 20. As Plaintiff conceded at the hearing, there is no evidence in this declaration that Plaintiff was told that she could not discuss the fact that she was abused. Indeed, the record presented shows that Plaintiff was seen by the Behavioral Health Services staff at Coffee Creek a total of 25 times, before and after she was allegedly abused. *See* Decl. of Polly Rowland ("Rowland Decl."), ECF 59 at ¶ 4.

Furthermore, Plaintiff's statement that Defendant Bruns did not provide her with "required PREA counseling" is inadmissible because the assertion that Defendant Bruns did not satisfy a duty under PREA amounts to an inadmissible legal conclusion. *Id.*; *see United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999). Because it does not state facts that "would be

admissible in evidence," this statement is "too conclusory to be cognizable" as evidence on a motion for summary judgment. *Id.* (quoting Fed. R. Civ. P. 56); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." (citation omitted)).

Third, State Defendants object to Plaintiff's discussion of closed-circuit television in her declaration. Plaintiff declares that there was no "closed-circuit television"[4] where she was raped, "despite years of sexual abuse of [Coffee Creek] inmates." Peterson Decl., ECF 79 at ¶ 21. State Defendants object to this evidence as beyond Plaintiff's personal knowledge. ECF 87 at 4. But the Ninth Circuit has described the personal knowledge requirement as a low threshold— particularly on summary judgment, where the non-moving party is entitled to all inferences in her favor. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013). Plaintiff's declaration establishes that she was in the areas which allegedly lacked surveillance cameras, a fact that she could have observed personally. *See* Peterson Decl., ECF 79. Thus, the Court overrules State Defendants' objection to this assertion.

Plaintiff also states in her declaration that she now understands that closed-circuit television has been added to the room where she was raped. *Id.* at ¶ 22. However, as Plaintiff's attorney acknowledged at the hearing, evidence that Coffee Creek has added closed-circuit television cameras in the area where Plaintiff was abused can constitute a subsequent remedial measure. *See* Fed. R. Evid. 407. Evidence of subsequent remedial measures is not admissible to prove culpable conduct. *Id.* Although evidence of remedial measures is admissible for certain other purposes, such as impeachment or feasibility, those exceptions are not applicable here. *See*

---

[4] By "closed-circuit television," the Court understands Plaintiff to be referring to surveillance cameras.

*id.* Because Plaintiff seeks to use evidence of newly installed closed-circuit television to prove State Defendants' culpable conduct and State Defendants have not disputed the feasibility of installing cameras, any evidence of subsequently installed cameras is inadmissible.[5] *See id.*

### 4. Judicial Notice

In her briefing and at oral argument, Plaintiff implicitly and explicitly asked the Court to take judicial notice of several facts. First, Plaintiff cites three cases from this district in support of her argument that Coffee Creek officials knew or should have known that the prison was "a hotbed of sexual abuse." ECF 49 at 5–6 (citing *C.K. et al. v. Golden et al.*, No. 3:09-cv-01496-JO; *Murray v. Austin et al.*, No. 3:11-cv-00183-HZ; *Durbin v. Palmateer et al.*, No. 3:04-cv-01641-JE). At oral argument, Plaintiff further suggested that these cases put Coffee Creek officials—in particular, Defendant Lyons, who was also a defendant in two of them—on notice that they needed to protect their inmates from the abuse of prison staff.

As this request concerns "adjudicative facts" about State Defendants' state of mind, it is governed by Rule 201 of the Federal Rules of Evidence. Fed. R. Evid. 201(a); *see Valdivia v. Schwarzenegger*, 599 F.3d 984, 994 (9th Cir. 2010) (defining "adjudicative facts" as "facts that normally go to the jury"). Rule 201 permits judicial notice of a fact "that is not subject to reasonable dispute" either because it is "generally known within the trial court's territorial jurisdiction" or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

In two of the cases that Plaintiff cites, the parties stipulated to early dismissal. *See Austin*, No. 3:11-cv-00183-HZ, ECF 27; *Palmateer*, No. 3:04-cv-011441-JE, ECF 8. The only assertions

---

[5] For the same reason, similar evidence from the deposition of Defendant Nelson, discussing the installation of surveillance cameras, would also be inadmissible even if the deposition excerpts were properly authenticated. *See* Nelson Dep., ECF 50-1 at 2–3.

of fact in these cases are contained in the complaints. In the third case, *C.K. et al. v. Golden et al.*, the parties also settled, but only after the court denied defendants' motion to dismiss. *See Golden*, No. 3:09-cv-01496-JO, 2010 WL 3119361 (D. Or. Aug. 5, 2010); *id.*, ECF 63 (D. Or. Nov. 29, 2011). That case also contains a declaration filed by one of the plaintiffs. *See id.*, ECF 26 (D. Or. April 28, 2010).

This request for judicial notice is not well taken. As any history of abuse at Coffee Creek is not "generally known" within this district, Plaintiff must provide this information "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, allegations in complaints or declarations filed in other cases do not meet this standard of reliability. *See Turnacliff v. Westly*, 546 F.3d 1113, 1120 n.5 (9th Cir. 2008). Furthermore, although "a court may take judicial notice of its own records in other cases," *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980), Plaintiff has not met her burden to identify any facts from these proceedings regarding State Defendants' state of mind. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").[6]

At the hearing, Plaintiff also sought judicial notice that prison officials are aware of their facilities' layouts and unsafe areas. These kinds of facts are not generally known within this

---

[6] At the hearing, Plaintiff also appeared to seek judicial notice of newspaper articles regarding the history of sexual abuse at Coffee Creek. Because Plaintiff has not provided any such newspaper articles, the Court declines this request. *See* Fed. R. Evid. 201(c) ("The court . . . must take judicial notice if a party requests it *and the court is supplied with the necessary information*." (emphasis added)).

district, and Plaintiff has not provided this information from "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, this Court declines the request.[7]

## B. Summary of Facts

The following summary reflects the record established in briefing the cross-motions for summary judgment, subject to the issues resolved above. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) ("Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered."). For the purpose of the pending motion, this Court has also assumed certain uncontested background facts from the pleadings to be true.

From February 23, 2015 to October 3, 2016, Plaintiff was an inmate at Coffee Creek, a prison run by the Oregon Department of Corrections ("ODOC"). Rowland Decl., ECF 59 at ¶¶ 1, 3. Beginning in August 2015, Plaintiff worked in Coffee Creek's "Programs Building" while incarcerated. *See* Peterson Decl., ECF 79 at ¶ 2. Her work supervisor was Defendant Edgar Mickles, who was then a correctional officer at Coffee Creek. *Id.* at ¶ 4; Answer, ECF 22 at ¶ 13.

Other defendants also worked at Coffee Creek while Plaintiff was incarcerated. Defendant Lester Kiser, as third shift minimum lieutenant, at times supervised Defendant Mickles. Decl. of Rob Persson ("Persson Decl."), ECF 57 at ¶ 3. Those in the chain of supervision above Defendant Kiser included Defendant Marsha McCorkhill, minimum captain; Defendant Dennis Caswell, assistant superintendent of security; and Defendant Rob Persson, the

---

[7] In addition, Plaintiff asked the Court to take judicial notice that surveillance cameras can document activities that are both legal and illegal in nature. As this proposition states a non-adjudicative fact, Rule 201 does not apply. *See* Fed. R. Evid. 201(a) advisory committee's note on proposed rules (distinguishing between adjudicative facts and "non-evidence facts to appraise or assess the adjudicative facts of the case"). To the extent that judicial notice is necessary to consider this background information, Plaintiff's request is granted.

prison's superintendent from March 2015 to May 2018. *Id.* at ¶¶ 1, 3. The remaining named

defendants are Alana Bruns, a correctional captain; Amanda Rasmussen, also a correctional

captain; Robert Nelson, a correctional corporal; Forrest Lyons, the assistant superintendent of

general services; and Lisa Hall, ODOC's correctional case management administrator. *See*

Answer, ECF 22 at ¶¶ 6, 7, 9, 10, 12. Defendant Bruns was also the designated PREA liaison at

Coffee Creek. *See* Peterson Decl., ECF 79 at ¶ 20. Defendants Bruns and Rasmussen did not

supervise Defendant Mickles from November 1, 2015 to March 1, 2016. Persson Decl., ECF 57

at 2 ¶ 4. Defendants Nelson, Lyons, and Hall never supervised Defendant Mickles. *Id.* at ¶ 5.[8]

   Plaintiff and Defendant Mickles met in August 2015. Peterson Decl., ECF 79 at ¶ 4. Soon

after they met, Defendant Mickles began flirting with Plaintiff, requesting sexual contact with

her, and touching her buttocks. *See id.* at ¶¶ 3–4. He slapped her buttocks for a second time in

September 2015. *See id.* at ¶ 5. By October, Defendant Mickles asked Plaintiff to kiss her on

numerous occasions, which she did. *Id.* That month, Defendant Mickles also asked Plaintiff,

"You wanna do it?" which Plaintiff understood to be a request to engage in sexual activity. *Id.* at

¶ 7. Plaintiff agreed to have sexual intercourse with Defendant Mickles for the first time in

November or December of 2015. *Id.* at ¶ 9.

   After that first time, Plaintiff told Defendant Mickles that she no longer wanted to engage

in sexual activity with him. *Id.* at ¶ 10. He did not listen and began to make sexual gestures and

remarks to her about further sexual behavior. *See id.* at ¶ 11. In December 2015, while Plaintiff

was cleaning in Room 2 and listening to music through headphones, Defendant Mickles came up

---

[8] Plaintiff's complaint also named 24 Doe defendants—allegedly, "the Superintendent, officers and managers in charge of security, the grievance coordinator[,] or IA staff." SAC, ECF 21 at 3–4 ¶¶ 6–7, 18 ¶ 49. At the hearing, the Court granted Plaintiff's oral motion for dismissal of the Doe defendants. *See* ECF 82.

to Plaintiff, surprising her. *See id.* at ¶¶ 12–13. As he pulled her on top of a table, she protested physically and tried to get away from him. *See id.* at ¶¶ 13–14. When she asked what he was doing, he responded, "Shut up bitch!" *Id.* at ¶ 14. Holding his hand over her mouth, he forced her to have sexual intercourse with him. *Id.* He also subjected her to "non-forcible, but non-consensual" sexual intercourse in January 2016. *Id.* at ¶ 15.

There have been incidents of sexual abuse at Coffee Creek in previous years. *See id.* at ¶ 21. There were no surveillance cameras installed in the programs building, including in Room 2.[9] *See id.* However, Defendant Nelson once "walked in on" Plaintiff and Defendant Mickles. *Id.* at ¶ 16. He did not report what he observed to anyone. *Id.*

Plaintiff reported these incidents for the first time in late February 2016. *See* Rowland Decl., Ex. 1, ECF 59-1 at 3–5 (recording on February 24, 2016 that Plaintiff had "reported a PREA incident for the first time" on the Monday of that week). Other inmates had also reported them. *See id.* at 48; Peterson Decl., ECF 79 at ¶ 17. Defendant Mickles was placed on administrative leave on November 11, 2016. Answer, ECF 22 at ¶ 13. During an investigation, Plaintiff showed officials a semen stain, matching the DNA of Defendant Mickles, in Room 2. Peterson Decl., ECF 79 at ¶ 18. On October 6, 2017, he pled guilty in Washington County Circuit Court to four counts of custodial sexual misconduct in the first degree, a violation of O.R.S. 163.452. Declaration of Jessica Spooner ("Spooner Decl."), Ex. 1, ECF 56-3 at 1–5. He pled guilty to an additional four counts on November 27, 2017. *Id.* at 6–9. He is currently serving a twenty-month sentence at the Two Rivers Correctional Institution in Umatilla, Oregon. Answer, ECF 22 at ¶ 16. He was formally terminated from ODOC employment on November 9,

---

[9] Although Plaintiff broadly claims prior instances of sexual abuse have occurred at Coffee Creek, Plaintiff has not alleged that any such prior abuse occurred in Room 2. Peterson Decl., ECF 79 at 3 ¶ 21.

2017, and the Oregon Department of Justice does not represent him in this litigation. *Id.* at 3 ¶ 13; *see* Spooner Decl., ECF 56 at 1–2 ¶ 1. Defendant Mickles has not answered the complaint in this action, and the clerk entered his default on October 18, 2019. ECF 77.

Plaintiff's medical records indicate that after February 2016, when she reported Defendant Mickles, she attended four mental health appointments in March 2016 and two in April 2016. *See* Rowland Decl., ECF 59 at ¶ 4 (listing appointment dates). She attended another seven appointments before her release from Coffee Creek in October 2016. *See id.* at ¶¶ 3–4.[10] Plaintiff's records suggest that at least one of these appointments was at the behest of Defendant Bruns. *See* Rowland Decl., Ex. 1, ECF 59-1 at 36.

Medical records also indicate that during a PREA investigation in early 2016, Plaintiff was housed in Coffee Creek's infirmary. *See id.* at 38–39. However, according to Plaintiff, she was isolated from other prisoners and staff members, as she was placed in "solitary and later isolated medical." Peterson Decl., ECF 79 at ¶ 20 ("I was denied privileges and made to feel like the offender of Mickles, rather than the [*sic*] his victim.").[11]

As a result of the "sexual battery, harassment[,] and abuse" committed by Defendant Mickles, Plaintiff has suffered from severe emotional distress. *Id.* at ¶ 19. Plaintiff sought mental

---

[10] Even if Plaintiff's statement that Defendant Bruns did not provide her with "required PREA counseling" were admissible, Plaintiff does not dispute that she attended these mental health appointments. *See* Peterson Decl., ECF 79 at ¶ 20.

[11] Plaintiff states in her declaration that she filed a notice of tort claim while she was in custody. Peterson Decl., ECF 79 at ¶ 23. Indeed, an unsworn "Tort Claim Notice" was attached to the declaration of her attorney. ECF 50-3. In this document, dated June 26, 2016, Plaintiff states that she was taken out of her treatment and "put on punishment" from February 23, 2016 to March 7, 2016. *Id.* However, the document is not mentioned in her attorney's declaration and not otherwise authenticated. *See* Fed. R. Evid. 901; ECF 50; ECF 50-3; *see also Orr*, 285 F.3d at 773 ("We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."). Furthermore, Plaintiff's attorney conceded at the hearing that the document is not relevant to any of Plaintiff's constitutional claims.

health treatment while incarcerated, both before and after she reported Defendant Mickles. *See* Rowland Decl., ECF 59 at ¶¶ 4, 6. She has a history of mental health symptoms, including depression and multiple suicide attempts. *See* Rowland Decl., Ex. 1, ECF 59-1 at 10. In total, she had 25 appointments with mental health professionals at Coffee Creek between March 10, 2015 and September 12, 2016. *See* Rowland Decl., ECF 59 at ¶¶ 4, 6. These appointments varied in frequency, ranging from more than once a week to once every few months. *See id.* at ¶ 4. Plaintiff was prescribed medication during her time at Coffee Creek, and she received a 30-day supply of the prescription before her release. *Id.* at ¶ 7. She now has access to mental health treatment and substance abuse counseling through her probation program and as a member of the Oregon Health Plan. Decl. of Rochelle Reed ("Reed Decl."), ECF 58 at ¶ 4. Plaintiff's probation supervision ends on August 21, 2021. *Id.* at ¶ 5.

## DISCUSSION

State Defendants move for summary judgment on the second and fourth claims in Plaintiff's second amended complaint.[12] Both claims allege violations of the constitution pursuant to 42 U.S.C. § 1983, and State Defendants do not dispute that they were acting under color of state law. *See Taylor v. List*, 880 F.2d 1040, 1046 (9th Cir. 1989). Plaintiff and State Defendants also agree that each of the defendants is named in his or her personal capacity, and that the statute of limitations bars claims prior to October 25, 2015. ECF 55 at 6–7; ECF 73 at 3.

As a preliminary matter, State Defendants and the Plaintiff dispute whether Defendant Nelson remains a party to this action. Although Defendant Nelson was named in the caption of the original and first amended complaints, ECF 1, ECF 6, he does not appear in the caption of

---

[12] As noted above, State Defendants are not named in Plaintiff's first claim for relief, and Plaintiff has conceded that the third claim fails as a matter of law.

the second amended complaint, ECF 21. Rule 10(a) of the Federal Rules of Civil Procedure requires that the "title of the complaint must name all the parties," and the Ninth Circuit has recognized "the well-established doctrine that an amended pleading supersedes the original pleading." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). In response, Plaintiff contends that the omission was inadvertent and that Defendant Nelson was named in the body of the second amended complaint. ECF 73 at 2; *see* Second Amended Complaint ("SAC"), ECF 21 at ¶ 14.

In general, district courts have allowed plaintiffs leave to amend their complaints when they have mistakenly omitted a defendant from a caption. *See, e.g.*, *Hamilton v. York*, 987 F. Supp. 953, 958 (E.D. Ky. 1997) (granting plaintiff leave to amend the complaint because defendant did not identify any prejudice it suffered from the omission).[13] Here, although this action has been pending for over two years, State Defendants have not identified any prejudice that they suffered from the omission of Mr. Nelson from the caption of the second amended complaint. *See* ECF 55 at 5; ECF 75 at 2. Accordingly, this Court will consider Defendant Nelson to be joined as a party for the purpose of the pending motion.

## A. Second Claim: Failure to Supervise

Plaintiff's second claim for relief alleges that prison officials' failure to supervise Defendant Mickles violated Plaintiff's Eighth Amendment right to be free from cruel and

---

[13] "If the body of the complaint correctly identifies the party being sued or if the proper person actually has been served with the summons and the complaint, federal courts generally will allow an amendment under Federal Rule of Civil Procedure 15 to correct technical defects in the caption when that is thought necessary. This corrective action seems appropriate inasmuch as a defective caption or even its complete absence is merely a formal error and never should be viewed as a fatal defect, particularly when it can be remedied early in the action. Moreover, allowing the defect to be corrected is consistent with the spirit of the federal rules in general and with Federal Rule of Civil Procedure 8(e) in particular." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1321 (4th ed. Aug. 2019).

unusual punishment. *See* SAC, ECF 21 at ¶ 41. In moving for summary judgment, State

Defendants argue that there would be insufficient evidence to support this claim at trial and that

they are entitled to qualified immunity for their actions. ECF 55 at 7–8, 13.

Public officials are not subject to supervisory liability under section 1983 for the actions

of their subordinates. *Ashcroft v Iqbal*, 556 U.S. 662, 677 (2009). Instead, "each Government

official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* The

mental state required for claims under section 1983 varies depending on the constitutional

provision at issue. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012). Liability

for unconstitutional conditions of confinement in violation of the Eighth Amendment requires a

showing of deliberate indifference. *See Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011)

(citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

The Ninth Circuit has described the requirements for supervisory liability under section

1983 in various ways. *See, e.g.*, *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)

("Supervisors can be held liable for: 1) their own culpable action or inaction in the training,

supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of

which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the

rights of others."); *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) ("A

supervisor may be held liable under § 1983 if he or she was personally involved in the

constitutional deprivation or a sufficient causal connection exists between the supervisor's

unlawful conduct and the constitutional violation."). In any event, the plaintiff must establish that

the supervisor's actions were a proximate cause of her injury. *See Starr*, 652 F.3d at 1207. "The

requisite causal connection can be established by setting in motion a series of acts by others or

by knowingly refusing to terminate a series of acts by others which the supervisor knew or

reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–08 (alterations, citations, and quotation marks omitted).

Plaintiff has advanced two theories of liability on this claim. The first is that Defendant Nelson is liable for failing to report sexual activity that he witnessed between Plaintiff and Defendant Mickles. *See* ECF 73 at 4. The sole evidence in support of this theory is paragraph 16 of Plaintiff's declaration, stating that "Officer Nelson walked in on [Plaintiff and Defendant Mickles] on one occasion and did not report it to anyone." Peterson Decl., ECF 79 at ¶ 16. State Defendants argue that this theory fails as a matter of law because Defendant Nelson never supervised Defendant Mickles, a fact which is undisputed. ECF 55 at 8; *see* Persson Decl., ECF 57 at ¶ 5.

Broadly speaking however, a formal supervisory role is not essential under section 1983. The Ninth Circuit has observed that "an official with no official authority over another actor can also be liable for that actor's conduct if he induces that actor to violate a third party's constitutional rights, provided that the official possesses the requisite intent . . . ." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (citing *Hartman v. Moore*, 547 U.S. 250, 262 (2006); *Harris v. Roderick*, 126 F.3d 1189, 1196–97 (9th Cir. 1997)). Even under this standard, Plaintiff has failed to produce the evidence necessary to survive a motion for summary judgment. Viewed in the light most favorable to Plaintiff, the fact that Defendant Nelson "walked in on" Plaintiff and Defendant Mickles does not support a reasonable inference that Defendant Nelson induced Defendant Mickles to abuse Plaintiff. *See* Peterson Decl., ECF 79 at ¶ 16. Summary judgment is thus appropriate regarding this theory because Plaintiff "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Plaintiff's second theory is that State Defendants are liable for failing to supervise Defendant Mickles because there were no surveillance cameras in the area where Plaintiff was abused, despite a history of sexual abuse at Coffee Creek. *See* ECF 49 at 6. The only evidence in support of this theory is a sentence from Plaintiff's declaration. *See* Peterson Decl., ECF 79 at ¶ 21 ("No closed circuit television (CCCTV) [*sic*] was in the Room 2, despite years of sexual abuse of [Coffee Creek] inmates."). At the hearing, Plaintiff argued that because cameras would have recorded any abuse that occurred, and because Defendant Mickles would not have abused Plaintiff if cameras were present, the lack of cameras was a cause of the abuse.

This argument is unavailing for two reasons. First, Plaintiff has not established a genuine issue of material fact as to the personal involvement of any of the State Defendants with respect to the absence of surveillance cameras. *See Taylor*, 880 F.2d at 1045 ("Liability under section 1983 arises only upon a showing of personal participation by the defendant." (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979))). Plaintiff has not produced evidence that any of the State Defendants were involved in the placement of surveillance cameras at Coffee Creek. Plaintiff has also not produced evidence that any of the State Defendants—other than Defendant Nelson, as discussed above—were personally aware "of specific instances of misconduct by prison officials and failed to act to prevent them." *See id.* at 1046.

Second, State Defendants are entitled to qualified immunity on their decisions related to placement of surveillance cameras. If Plaintiff's argument were correct, it would require surveillance cameras to be installed in all areas at every prison where inmates have been abused. Whether that decision would be good as a matter of policy is not before this Court. But as a matter of constitutional law, the Supreme Court has held that qualified immunity exists to shield these kinds of "discretionary functions" from liability. *See Ziglar*, 137 S. Ct. at 1866. The

doctrine provides immunity when the right asserted by a plaintiff was not clearly established or when the officials could have reasonably believed that their conduct was lawful. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

Plaintiff has not established that reasonable individuals in State Defendants' positions would have known that their action (or inaction) regarding surveillance cameras in the areas at issue in this case would subject them to liability. *See Ziglar*, 137 S. Ct. at 1867; *see also Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (holding that plaintiff bears the burden of showing that a right was clearly established). Accordingly, State Defendants are entitled to qualified immunity regarding the placement of surveillance cameras at Coffee Creek. *See Pearson*, 555 U.S. at 236 (holding that the court may decide whether defendants are entitled to qualified immunity without ruling on the constitutionality of their actions).

For each of these reasons, the Court grants summary judgment to each of the State Defendants on the second claim in Plaintiff's second amended complaint.

## B. Fourth Claim: Failure to Provide Ongoing Treatment and Care

Plaintiff's fourth claim alleges that Defendants Bruns, Rasmussen, McCorkhill, and Kiser failed to provide her with mental health treatment after she reported abuse by Defendant Mickles. SAC, ECF 21 at ¶ 54. Although Plaintiff originally alleged violations of PREA, she has since limited her claim to violations of the Eighth and Fourteenth Amendments. *See id.*; ECF 73 at 4–5.[14] State Defendants argue that there would be insufficient evidence to support this claim at trial and that they are entitled to qualified immunity for their actions. ECF 55 at 11–13. Indeed,

---

[14] Plaintiff's complaint further alleged that her rights were violated because she did not receive care after her release from prison. *See* SAC, ECF 21 at 19 ¶ 54. However, she conceded in her briefing that State Defendants were under no duty to provide her with medical care after her release. ECF 73 at 4.

there is no evidence of personal involvement by Defendants Rasmussen, McCorkhill, and Kiser. Accordingly, the Court grants summary judgment in their favor, *see Taylor*, 880 F.2d at 1045–46, and considers the claim against Defendant Bruns.

"A public official's 'deliberate indifference to a prisoner's serious illness or injury' violates the Eighth Amendment ban against cruel punishment." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). To establish an Eighth Amendment violation under section 1983, a prisoner must satisfy "both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). First, the plaintiff must show that she was "confined under conditions posing a risk of 'objectively, sufficiently serious' harm . . .." *Clement*, 298 F.3d at 904 (quoting *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)). This prong is satisfied "whenever the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). Second, she must demonstrate that the prison official acted with "deliberate indifference." *Toguchi*, 391 F.3d at 1057. This standard requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence is not enough. *Id.* at 835.

There is no contention that any of the State Defendants are medical professionals. Nevertheless, prison administrators "are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help." *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006). In the same vein, prison guards can be liable for "intentionally denying or delaying access

to medical care." *Hamilton v. Brown*, 630 F.3d 889, 897 (9th Cir. 2011) (quoting *Estelle*, 429 U.S. at 104–05). These claims require facts from which a reasonable jury could infer the requisite state of mind. *See Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). "Even if a prison official *should* have been aware of the risk, if he 'was not, then [he] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (alterations in original) (quoting *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Viewed in the light most favorable to Plaintiff, there is no evidence that Defendant Bruns was aware that Plaintiff received inadequate medical treatment or faced a substantial risk of serious harm. Plaintiff has made no showing that Defendant Bruns was aware of Plaintiff's grievances about medical treatment. *Cf. Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (finding that issues of fact precluded summary judgment where former prison employee admitted awareness of plaintiff's grievances), *overruled on other grounds by Peralta*, 744 F.3d at 1083. Nor has Plaintiff cited any evidence that she complained to Defendant Bruns or the other State Defendants. *Cf. Jett*, 439 F.3d at 1098 (finding fact issues where plaintiff had sent grievance letters to prison officials). Finally, the record suggests that Defendant Bruns referred Plaintiff to medical treatment on one occasion. *See* Rowland Decl., Ex. 1, ECF 59-1 at 36. But even if Defendant Bruns had a role in referring Plaintiff to treatment, that limited role would not reasonably support an inference of deliberate indifference. *See Peralta*, 744 F.3d at 1086–87 (affirming summary judgment in favor of prison administrator who signed off on denial of medical treatment).

Plaintiff also states in her declaration that Defendant Bruns placed her "in solitary and later isolated medical" and denied her privileges. ECF 79 at ¶ 20. The Ninth Circuit has explained that Eighth Amendment standards apply the same whether a prisoner is in the general

population or in "isolation, segregation, [or] protective custody." *Hoptowit v. Ray*, 682 F.2d

1237, 1258 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472

(1995). Either way, the Eighth Amendment requires that conditions of confinement—such as

food, medical care, and personal safety—be analyzed individually rather than under the totality

of the circumstances. *See id.*; *Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991). As noted above,

Plaintiff has not presented sufficient evidence that Defendant Bruns was deliberately indifferent

to her medical needs. Moreover, Plaintiff has not identified any other privileges that she was

denied. Ultimately, because Plaintiff not presented evidence on essential elements of her claim,

the Court grants summary judgment to Defendant Bruns. *See Celotex*, 477 U.S. at 323.

As Plaintiff has not established that existing precedent placed the constitutionality of

Defendant Bruns's actions beyond debate, she is also entitled to qualified immunity. *See Hamby*

*v. Hamilton*, 821 F.3d 1085, 1091 (9th Cir. 2016) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 740

(2011)).[15] The record indicates that Plaintiff was seen by staff of Coffee Creek's Behavioral

Health Services for a total of 25 times, including after she reported Defendant Mickles, and it is

not unconstitutional for administrators to rely on the expertise of prison medical staff. *See*

*Peralta*, 744 F.3d at 1087. Plaintiff's argument to the contrary—that State Defendants are not

entitled to qualified immunity in light of PREA and previous incidents at Coffee Creek—is

misplaced. *See* ECF 49 at 12–14; ECF 73 at 6–9. Qualified immunity requires analyzing the

officials' conduct "given the specific facts under review." *See Hamby*, 821 F.3d at 1090–91.

Thus, Defendant Bruns is also entitled to qualified immunity on this claim.

---

[15] Even if Plaintiff's statement that Defendant Bruns did not provide counseling required under
PREA were admissible, Plaintiff has still not demonstrated that this failure amounted to a clearly
established violation of the Eighth Amendment.

## CONCLUSION

Plaintiff's motion for extension of time is GRANTED. State Defendants' motion for summary judgment is GRANTED on the second, third, and fourth claims as to Defendants McCorkhill, Bruns, Kiser, Persson, Hall, Lyons, Nelson, Rasmussen, and Caswell.

**IT IS SO ORDERED**.

DATED this 14th day of January, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge